# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO.: 3:04CV252

| | |
|---|---|
| **MICHAEL J. QUILLING, Receiver** <br> for **FREDERICK J. GILLILAND,** <br><br> **Plaintiff,** <br><br> vs. <br><br> **MARILYNN CRISTELL and the** <br> **ESTATE OF RAYMOND R. CRISTELL,** <br><br> **Defendants.** | ) <br> ) <br> ) <br> ) <br> ) **ORDER** <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**THIS MATTER IS BEFORE THE COURT** upon Defendants' Motion to Dismiss Complaint and Declaration of Marilynn Cristell, both filed July 26, 2004. (Documents ##8, 9). On August 9, 2004, the Receiver filed a "Response to Defendants' Motion to Dismiss and Brief in Support." (Document #10). No Reply was filed.

Having carefully considered the arguments, the record, and the applicable authority, for the below-stated reasons the Court will <u>deny</u> Defendants' Motion to Dismiss.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In March 2002, the Securities and Exchange Commission instituted suit against Frederick Gilliland in connection with a Ponzi scheme Gilliland had orchestrated to defraud investors out of approximately $29 million.[1] On May 21, 2003, Michael J. Quilling was appointed as receiver

---

[1] Gilliland was indicted by the United States for his criminal activity in this case and pled guilty to the charges on June 24, 2005.

1

for the estate of Frederick J. Gilliland, including entities such as Sterling Assets Services, Ltd., Sterling Management Services, Inc. and Eagle Asset Management, Inc. that were owned or controlled by Gilliland. *See* SEC v. Gilliland, 3:02CV128-K, doc. 21. The purpose of this receivership was to preserve and protect the assets of the Receivership Estate for the benefit of all creditors of the Receivership Estate including investors who had been defrauded by Gilliland's Ponzi scheme. *Id.*

By this lawsuit, the Receiver seeks to recover assets of the Receivership Estate that were fraudulently transferred to Defendants as part of Gilliland's Ponzi scheme. Specifically, the Receiver seeks to recover in excess of $115,000 of investor funds that were fraudulently diverted to the Defendants in late 1998 in the form of $25,000 in cash and a $90,000 1999 Mercedes Benz SL500. These assets were fraudulently transferred from Gilliland and/or entities owned or controlled by him to Defendants.

Defendants move to dismiss on the following grounds: (1) lack of personal jurisdiction; (2) lack of subject matter jurisdiction; (3) lack of standing; and (4) violation of the statute of limitations. After reviewing the pleadings, it is clear that Defendants' arguments ignore both the purpose of federal equitable receiverships and the procedures in place to meet that purpose. Accordingly, for the following reasons, Defendants' Motion to Dismiss should be denied.

## II. DISCUSSION

### A. Personal Jurisdiction

Defendants argue that this Court lacks personal jurisdiction over them because they do not have sufficient minimum contacts with North Carolina, the forum state. This argument is unpersuasive.

The *in personam* jurisdiction of a Court in a federal equity receivership proceeding is not governed by traditional minimum contacts analysis argued by Defendants. In cases involving federal equity receiverships, the receivership court acquires nationwide jurisdiction based on the interplay of 28 U.S.C. § 754 and 28 U.S.C. § 1692. *See S.E.C. v. Vision Comm., Inc.*, 74 F.3d 287, 290 (D.C. Cir. 1996); *American Freedom Train Foundation v. Spurney*, 747 F.2d 1069, 1073 (1st Cir. 1984); *Haile v. Henderson Nat'l. Bank*, 657 F.2d 816, 823-24 (6th Cir. 1981); *Wing v. Storms*, Cause No. 1:02CV127DAK, 2004 WL 724448, *1 (D. Utah February 5, 2004); *Terry v. June*, No. Civ. A. 303CV00052, 2003 WL 22125300, *5 (W.D. Va. Sept. 12, 2003); *S.E.C. v. Cook*, Cause No. 3-01-CV-0480-R, 2001 WL 803791, *2-3 (N.D. Tex. July 11, 2001); *Select Creations, Inc. v. Paliafito America, Inc.*, 852 F. Supp. 740, 780-81 (E.D. Wis. 1994).

Rule 4 of the Federal Rules of Civil Procedure contemplates that a district court may acquire personal jurisdiction through the use of statutes of the United States which provide for service of process upon a party not an inhabitant of or found within the state in which the district court is located. Fed. R. Civ. P. 4(k)(1)(D); *see also Haile v. Henderson Nat'l. Bank*, 657 F.2d 816, 824 (6th Cir. 1981). Thus, if a congressional statute provides for extraterritorial or nationwide service of process, the district court has personal jurisdiction over all served within the extended territory of the district court. In receiverships, 28 U.S.C. § 754 and § 1692 provide for such extra-territorial service of process. Section 754 extends the territorial jurisdiction of the district court to any territory where property of the receivership estate is present so long as the filing requirements of section 754 are met. Section 754 provides in pertinent part:

> A receiver appointed in any civil action or proceeding involving property, real, personal or mixed, situated in different districts shall, upon giving bond as required by the court, be vested with complete jurisdiction and control of all such

property with the right to take possession thereof.

Such receiver shall, within ten days after the entry of the his order of appointment, file copies of the complaint and such order of appointment in the district court for each district in which property is located.

Section 1692 then provides for service of process in any such district where 754 filings are properly made. Section 1692 provides in pertinent part:

> In proceedings in a district court where a receiver is appointed for property, real, personal or mixed, situated in different districts, process may issue and be executed in any such district, but orders affecting the property shall be entered of record in each such district.

Through the interaction of sections 754 and 1692 the receivership court acquires both *in rem* and *in personam* jurisdictions in all districts where section 754 filings are timely made. *Vision Comm., Inc.*, 74 F.3d at 290; *Haile*, 657 F.2d at 823-24. Courts which have addressed the interplay of Rule 4 and Sections 754 and 1692 recognize that these provisions for extraterritorial service are "made to facilitate judicial efficiency by permitting courts to manage claims regarding receivership property in a single forum." *See, e.g. Terry v. June*, No. Civ. A. 303CV00052, 2003 WL 22125300, *5 (W.D. Va. Sept. 12, 2003).

In this case, the Receiver was originally appointed on May 21, 2003 and was then reappointed by order dated November 24, 2003. On December 3, 2003, within the ten day period, the appropriate 754 filings were made with each of the federal districts in Florida, including the district in which the Defendants reside. *See* doc. 10, Ex. A. Because the filings were made within ten days of the Receiver's reappointment, they are effective to extend the jurisdiction of this Court to Florida. *Vision Comm., Inc.*, 74 F.3d at 291; *Terry*, 2003 WL 22125300 at *3 (courts addressing this issue "unanimously suggest that an order of

4

reappointment will renew the ten-day filing deadline mandated by section 754"). Thus, by virtue of the timely made 754 filings and the provisions of section 1692, this Court has personal jurisdiction over the Defendants who are residents of Florida.

Defendants argue that sections 754 and 1692 only apply to the extra-territorial extension of *in rem* jurisdiction. In support, Defendants rely on two unreported decisions out of the United Stated District Court for the Northern District of Illinois: *Stenger v. Leadenhall Bank & Trust Co., Ltd.*, No. 02 C 8655, 2004 WL 609795 (N.D. Ill. Mar. 19, 2004) and *Stenger v. World Harvest Church, Inc.*, 2003 WL 22048047 (N.D. Ill. Aug. 29, 2003). These are the only two cases that have held that the interaction of sections 754 and 1692 do not extend *in personam* as well as *in rem* jurisdiction. These decisions are not binding on this Court and they fly squarely in the face of overwhelming authority to the contrary. *See SEC v. Bilzerian*, 378 F. 3d 1100 (D.C. Cir. 2004)(discussion rejecting the reasoning in the *Stenger* opinions and citing the many courts holding to the contrary).

The Defendants also rely on *Gilchrist v. GE Capital Corp.* to support their argument that section 754 and section 1692 do not extend *in personam* jurisdiction. In *Gilchrist v. GE Capital Corp.*, the Fourth Circuit held that section 754 alone does not provide *in personam* jurisdiction unless there is an express congressional grant of personal jurisdiction. However, the Court did not consider (nor was it briefed or argued) whether section 1692 would provide such a congressional grant of personal jurisdiction (as has been held by each of the cases cited above), and instead the Court expressly refused to rule on the issue of personal jurisdiction as it had not properly been raised by the parties. In that the issue has never been expressly ruled on by the Fourth Circuit, there is no reason for this Court to conclude, as Defendants suggest, that the

5

Fourth Circuit has held that there is no *in personam* jurisdiction. There is no indication that the Fourth Circuit would follow the interpretation of two unreported cases from the Northern District of Illinois rather than reported decisions from at least three Circuits. Additionally, a district court opinion from within the Fourth Circuit indicates that under Fourth Circuit precedent, it is proper to rely on sections 754 and 1692 to assert personal jurisdiction. *Terry v. June*, No. Civ. A. 303CV00052, 2003 WL 22125300, at *4 (W.D. Va. Sept. 12, 2003).

The facts of *Terry* are indistinguishable from the facts presented by this case. *Id.* at *1. Terry was appointed receiver for an individual and his entities that had engaged in a Ponzi scheme. *Id.* Terry filed suit against June to recover receivership assets that were transferred to June. *Id.* June sought to dismiss the claims on the grounds that the Virginia court lacked personal jurisdiction over him as he was a resident of Michigan who had no contacts with the state of Virginia. *Id.* Relying on the interplay of section 754 and 1692, the court held that the assertion of jurisdiction would be proper so long as "the assertion of jurisdiction over the defendant is compatible with due process." *Id.* at *4. In conducting this analysis, the Court found that "the congressionally articulated policy permitting the assertion of in personam jurisdiction should prevail except in cases of extreme inconvenience or unfairness." *Id.* at *5. Though June would encounter some inconvenience in defending the suit in Virginia as he was a Michigan resident, the court held that this inconvenience did not rise to the level of extreme inconvenience or unfairness so as to implicate due process concerns. *Id.*

Here, though Defendants may be inconvenienced by litigating this matter in North Carolina, such inconvenience is not so extreme as to justify thwarting the congressionally articulated policy that allows for extraterritorial jurisdiction in receivership cases. To hold

otherwise would ignore and undermine the policy of facilitating judicial efficiency by permitting courts to manage claims regarding receivership property in a single forum. Therefore, it is proper for this receivership court to exercise *in personam* jurisdiction over Defendants.

**B.** **Subject Matter Jurisdiction**

Defendants argue that this Court does not have subject matter jurisdiction because the amount in controversy does not meet the jurisdictional threshold. This argument is unpersuasive.

Subject matter jurisdiction is proper in this case under principles of ancillary jurisdiction. "It is established law that a federal court which appoints a receiver has ancillary jurisdiction over all suits brought by the receiver in furtherance of the receivership." *City of Detroit v. Michigan*, 538 F. Supp. 1169, 1172 (E.D. Mich. 1982); *see also Missal v. Alexander*, Cause No. 99-7127, 2000 WL 274230 (D.C. Cir. February 15, 2000)(per curiam). "A federal receiver may sue in the court of his or her appointment 'to accomplish the ends sought and directed by the suit in which the appointment was made,' and 'such action or suit is regarded as ancillary' to the court's original subject matter jurisdiction." 12 *Wright, Miller & Marcus, Federal Practice and Procedure* § 2985 (2d ed. 1997); *see also Pope v. Louisville, N. A. & C. Ry. Co.*, 173 U.S. 573, 577 (1989); *Tcherepnin v. Franz*, 485 F.2d 1251, 1255-56 (7th Cir. 1973). Because such jurisdiction is ancillary, it is not dependent on a showing of federal question or diversity factors which would normally determine jurisdiction. *Haile v. Henderson Nat'l. Bank*, 657 F.2d 816, 825 (6th Cir. 1981).

This Court clearly had federal question subject matter jurisdiction over the original

proceeding in which the Receiver was appointed.² Additionally, this suit is being brought to further the purposes of the receivership which were to manage and preserve the assets of the Receivership Estate for the benefit of the creditors of the Receivership Estate. This action is being brought to recover receivership assets that were fraudulently transferred to Defendants. Therefore because this Court properly had federal question subject matter jurisdiction over the original action in which the Receiver was appointed, and because this action is being brought to further the purposes of that receivership, it is proper for this Court to exercise ancillary subject matter jurisdiction over the present matter.

Even if this Court did not have ancillary jurisdiction over the subject matter, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332. Section 1332 confers jurisdiction where there is complete diversity between the parties and the amount in controversy is in excess of $75,000. Defendants concede that there is complete diversity but assert that the amount in controversy of the claims asserted by the Receiver is not in excess of $75,000. Defendants submit evidence that the *current* Kelley Blue Book valuation of the car is $26, 265.³

The current valuation of the car is irrelevant, the value at the time of the fraudulent

---

²The Receiver was appointed by this Court in Case No. 3:02cv128. In that case, the Securities and Exchange Commission alleged that Gilliland had violated various provisions of the Securities Act of 1933 (15 U.S.C. § 77) and the Securities Exchange Act of 1934 (15 U.S.C. § 78). As such, this Court had subject matter jurisdiction over the action where the Receiver was appointed, premised on alleged violations of these federal statutes.

³Given that the cash transfer was $25,000, the car must be worth at least an additional $50,000 to meet the jurisdictional threshold.

transfer controls under both North Carolina and Florida law.[4] *See* N.C. Stat. § 39-23.8(c); Fla. Stat. § 726.109(3) (where an asset is fraudulently transferred, the judgment regarding such transfer must be for the value of the asset at the time of the transfer). In this case, the 1999 Mercedes Benz that was transferred was purchased for $91,228.15 on September 30, 1998 using funds from an account held in the name of Sterling Management Services, Inc. The car was titled in the name of Eagle Asset Management, Inc., another entity owned and controlled by Gilliland that is included in the Receivership Estate. The vehicle was transferred from Eagle Asset Management, Inc. to Defendants sometime in late 1998 or early 1999. While the exact date of transfer is not known, in early 1999, the latest possible time period, the value was over $68,000.[5] When this amount is combined with the $25,000 in cash that was transferred, the amount in controversy is in excess of $75,000. Thus, this Court has subject matter jurisdiction over these claims both through ancillary jurisdiction and through traditional diversity jurisdiction principles.

### C.     Standing

Defendants argue that the Receiver lacks standing to assert this claim because Gilliland, as the wrongdoer, would not have standing to assert this claim. This argument is unpersuasive.

---

[4]As it is not clear whether the transfer occurred in North Carolina or Florida, it is not clear which state law controls. The outcome is the same under the laws of either state.

[5]Kelley Blue Book (which the Defendants assert is authoritative on vehicle valuation issues) offers a historical resource to obtain information regarding the value of vehicles at certain historical points in time. The oldest historical value that Kelley Blue Book can provide for the 1999 Mercedes is for the January/February 2000 time period. As of January/February 2000 the retail value of the 1999 Mercedes SL 500 was $77,400 and the wholesale value was $68,300. *See* Doc. #10, Exh. A.

Defendants' argument ignores the Order Appointing Receiver which appoints Quilling as Receiver for the "Receivership Estate" which is defined as including all assets of Sterling Assets Services, Ltd. and Sterling Management Services, Inc. and the assets of any other entity owned or controlled by Gilliland (the "Gilliland Entities"). Thus, the Receiver is the receiver for Gilliland and all corporate entities that were owned and/or controlled by him. In this case, the fraudulently transferred property was transferred to Defendants from the Gilliland Entities rather than directly from Gilliland. Thus, the fraudulent transfer claims are brought by the Receiver on behalf of the Gilliland Entities to recover funds and assets that were wrongfully diverted by Gilliland while he was in control of the Gilliland Entities.

In a similar situation, the Seventh Circuit has approved of a receiver bringing fraudulent transfer claims against third-parties. *Scholes v. Lehmann*, 56 F.3d 750, 754-55 (7th Cir. 1995). Scholes was appointed receiver for Michael Douglas and corporations controlled by him that had participated in a Ponzi scheme. *Id.* at 752. Scholes brought fraudulent transfer claims against third-parties who had received transfers from the corporate entities. *Id.* at 753. The court held that because the corporate entities were harmed when assets were diverted through the fraudulent transfer, the receiver, as the holder of claims belonging to the corporations, had standing to assert these claims. *Id.* at 754-55.

The third-parties argued that principles of *in pari delicto* should bar the claims of these corporations because they had been participants in the wrongdoing. *Id.* The court rejected this argument stating that "[t]he defense of *in pari delicto* loses its sting when the person who is *in pari delicto* is eliminated." *Id.* at 754.

In this case, once the Receiver was appointed, the Gilliland Entities were freed from the

control of Gilliland, and the Gilliland Entities became entitled to the return of the funds that were wrongfully diverted to the Defendants. Under the clear and persuasive reasoning of the court in *Scholes*, the Receiver, as receiver for all entities owned or controlled by Gilliland, including the Gilliland Entities, properly has standing to bring the fraudulent transfer claims that he is asserting against Defendants.

**D.     Statute of Limitations**

Lastly, Defendants argue that the statute of limitations has run on this claim. This argument is unpersuasive.

Both Florida and North Carolina law[6] provide that causes of action seeking to recover assets that have been fraudulently transferred may be brought within four years of the transfer, or in the case of transfers made with the intent to hinder, delay or defraud creditors, within one year of when the transfer was or could have reasonably been discovered by the claimant. Fla. Stat. § 726.110; N.C. Stat. § 39-23.9.

This case involves a transaction that Gilliland directed with the intent to hinder, delay or defraud creditors. In cases involving Ponzi schemes, fraudulent intent on the part of the transferor is inferred. *In re World Vision Entertainment, Inc.*, 275 B.R. 641, 656 (M.D. Fla. 2002)(holding that payments made pursuant to a Ponzi scheme were made with the intent to defraud creditors and were as such fraudulent conveyances under section 726.105(a) of the Florida Fraudulent Transfers Act); *Quilling v. Gilliland*, Cause No. 3-01-CV-1617, 2002 WL

---

[6]As noted above, because it is not clear whether the transfer occurred in North Carolina or Florida, it is not clear which state law controls but the outcome is the same under the laws of either state.

373560, *2 (N.D. Tex. March 6, 2002)(recognizing that a transferor's "intent to hinder, delay or defraud is established by the mere existence of the Ponzi scheme."); *S.E.C. v.* Cook, 2001 WL 256172, *3 (N.D. Tex. March 8, 2001)(same); *In re Ramirez*, 209 B.R. 424, 434 (Bankr. S.D. Tex. 1997)(holding that as a matter of law, payments of commissions and profits in a Ponzi scheme constituted transfers made with actual intent to hinder, delay and defraud.); *Merrill v. Abbott (In re Independent Clearing House Company)*, 77 B.R. 843, 860 (D. Utah 1987).

The Receiver brought the claims in this suit within one year of when the fraudulent transfer was or could reasonably have been discovered. The Receiver was appointed by order dated May 21, 2003. The fraudulent transfers involved in this lawsuit could not have been discovered because at that time, Gilliland was in control of the Gilliland Entities. Equitable tolling principles recognize that so long as a corporation remains under the control of wrongdoers, it cannot be expected to take action to vindicate the harms and injustices perpetrated by the wrongdoers. *See Martin Marietta Corp. v. Gould, Inc.*, 70 F.3d 768, 772 (4th Cir. 1995)("the wrongdoers' control results in the concealment of any causes of action from those who otherwise might be able to protect the corporation"); and *F.D.I.C. v. Gonzalez-Gorrondona*, 833 F. Supp. 1545, 1557 (S.D. Fla. 1993). Thus, while Gilliland remained in control of the Gilliland Entities, the fraudulent transfers were concealed and could not reasonably be discovered. These transfers only became discoverable when the Receiver was appointed and placed in control of the Gilliland Entities. *In re Blackburn*, 209 B.R. 4, 13 (Bankr. M.D. Fla. 1997)(holding that under the principles of adverse domination, the statute of limitations was tolled until the appointment of the receiver).

The Receiver was appointed on May 21, 2003. Once he was appointed, the illegitimate

nature of the transfers involved in this lawsuit could be discovered. This lawsuit was filed on May 20, 2004, which is within one year of when the fraudulent transfer was or reasonably could have been discovered. Accordingly, the Receiver's claims are not barred by the statute of limitations. Fla. Stat. § 726.110; N.C. Stat. § 39-23.9.

### III. CONCLUSION

**IT IS, THEREFORE, ORDERED** that Defendants' Motion to Dismiss is hereby **DENIED**.

Signed: February 9, 2006

Richard L. Voorhees
Chief United States District Judge